UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| **LARS ERICKSON,** | ) | No. 3:11-CV-01129-SI |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL JOHN BLAKE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**SIMON, District Judge.**

Lars Erickson has sued Michael John Blake for copyright infringement of Mr. Erickson's musical work, *Pi Symphony*. Mr. Blake has moved to dismiss the complaint for failure to state a claim upon which relief can be granted (Dkts. 1-10, 10). *See* Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Mr. Blake's motion to dismiss is granted.

## BACKGROUND

In considering a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and construe them in favor of the plaintiff. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Mr. Erickson, who lives in Omaha, Nebraska, composed the work *Pi Symphony* in 1992 and registered it with the U.S. Copyright Office. *Pi Symphony* is an orchestral piece with two movements that is inspired by the number *pi*.[1] For the primary motif of *Pi Symphony*, Mr. Erickson assigned each number between 0 and 9 to musical notes, which he then played in the order of the digits of *pi*. Mr. Erickson has maintained a web site, www.pisymphony.com, that promotes this work. In May 2010, he posted to this website a YouTube video that includes a performance of *Pi Symphony* and a detailed description of how he developed it.

In February 2011, Mr. Blake published a YouTube video of a musical work titled "What Pi Sounds Like." Like Mr. Erickson, Mr. Blake assigned a number to each note of a musical scale and then constructed a melody by playing the notes in the order of the digits of *pi*. "What Pi Sounds Like" is a short canon based on this melody.[2] Mr. Blake, who lives in Portland, Oregon, offers copies of his work for sale online. Mr. Erickson claims that "What Pi Sounds Like" infringes on his work, *Pi Symphony*. He sued Mr. Blake in the District of Nebraska, asserting copyright infringement and unfair competition claims.

In Nebraska, Mr. Blake moved to dismiss Mr. Erickson's complaint, arguing that the two musical works bear no similarity beyond the idea of putting the digits of *pi* to music. Mr. Blake further argued that the federal court in Nebraska lacked personal jurisdiction over him. Mr. Blake also asked, in the alternative, for the case to be transferred to the District of Oregon. The federal court in Nebraska agreed with Mr. Blake that it lacked personal jurisdiction over him and that

---

[1] *Pi* is a mathematical constant that is the ratio of a circle's circumference to its diameter. It is an irrational number, which means that its numerical representation never ends and never repeats. The first six numbers of *pi* are 3.14159.

[2] In a canon, the same melody is begun at different parts so that the melody overlaps with itself. "Row, row, row your boat" and "Frère Jacques" are common canons.

venue in Nebraska was improper. It therefore transferred the case to this court without ruling on Mr. Blake's motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. At the parties' request, and following additional briefing, I will now resolve the remainder of Mr. Blake's motion to dismiss.

## STANDARD

A motion to dismiss for failure to state a claim should be granted when there is no cognizable legal theory to support the claim, or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). Although the court must accept as true all well-pleaded factual allegations in the complaint, the court does not have to credit the plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

When considering a Rule 12(b)(6) motion, the court may only consider matters and materials contained within the parties' pleadings (the complaint and answer). *See, e.g.*, *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). A court may, however, consider materials that are attached to the complaint and materials on which the plaintiff's case necessarily relies where the authenticity of those materials is not disputed. *Id.* Mr. Erickson did not attach either *Pi Symphony* or "What Pi Sounds Like" to his complaint. Mr. Blake, however, attached both works to his motion to dismiss. Because Mr. Erickson's case is premised on these two works and because neither party disputes the works' authenticity, this court will consider both works in ruling on this motion to dismiss.[3]

---

[3] Mr. Erickson registered with the U.S. Copyright Office a tape recording of *Pi Symphony*. He also attached a sheet that depicted the notes of the main motif of *Pi Symphony*, which correspond to the first thirty-three digits of *pi* transposed to the C-major scale. Sound

## ANALYSIS

### I.    Copyright Infringement

To establish copyright infringement, Mr. Erickson must prove (1) ownership of the copyright and (2) copying by Mr. Blake of "the constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977), *superseded on other grounds by* 17 U.S.C. § 504(b). Mr. Erickson's ownership of his copyright is not disputed. To prove that Mr. Blake copied his work, Mr. Erickson can rely on circumstantial evidence (1) that Mr. Blake had access to the copyrighted work and (2) that there is substantial similarity between the copyrighted work and Mr. Blake's work. *Krofft*, 562 F.2d at 1162. Mr. Erickson has alleged facts that could establish Mr. Blake had access to the copyrighted work. Thus, the question before the court is whether the complaint states a plausible claim that the copyrighted work and the allegedly infringing work are substantially similar.

In the Ninth Circuit, the plaintiff establishes substantial similarity by demonstrating that the allegedly infringing work is both objectively similar (the "extrinsic test") and subjectively

---

recordings and musical compositions are separate works with their own distinct copyrights. *Compare* 17 U.S.C. § 102(a)(2) *with id.* § 102(a)(7). The registering of a sound recording, however, can automatically register the musical composition embodied by the sound recording when the claimant is the same for both works. *See* 37 C.F.R. § 202.3(b)(1)(iv); *see also Griffin v. J-Records*, 398 F. Supp. 2d 1137, 1142 & n.10 (E.D. Wash. 2005). The court therefore understands Mr. Erickson's copyright to include both the sound recording of *Pi Symphony* and the musical score it embodies. The court does not understand the copyright to extend to the additional sheet that depicts the sequence of notes corresponding to the first thirty-three digits of *pi*; for the reasons set forth below, that sequence by itself is not a protectable element of Mr. Erickson's musical work. In addition, a copyright in a sound recording only protects against a direct duplication of that recording. 17 U.S.C. § 114(b). Because such duplication is not at issue here, the court evaluates Mr. Erickson's infringement claim solely in light of his copyright for the musical composition embodied by the registered recording.

similar (the "intrinsic test") to the copyrighted work. *Id.* at 1164. The intrinsic test, which is based on the ordinary person's subjective impressions of the compared works as a whole, is typically a question reserved for the jury. *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). Whether there is sufficient objective similarity under the extrinsic test, however, may be decided by the court as a matter of law on a motion to dismiss. *See Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."); *see also, e.g.*, *Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111 (N.D. Cal. 2010); *Capcom Co., Ltd. v. MKR Group, Inc.*, 2008 WL 4661479, at *4-5 (N.D. Cal. Oct. 20, 2008) (collecting cases); *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1130-31 (C.D. Cal. 2007) (collecting cases); *accord Peter F. Gaito Architecture, LLC v. Simone Dev't Corp.*, 602 F.3d 57, 64-65 (2d Cir. 2010); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143-44 (8th Cir. 1989); *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 787-88 (S.D. Tex. 2009) (collecting cases).

When applying the extrinsic test, the court must analytically dissect the works to evaluate any similarities on an element-by-element basis. *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). Not every constituent element of a copyrighted work is protected by the copyright. *See Feist*, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected. . . . [C]opyright protection may extend only to those components of a work that are original to the author.").[4] The court must

---

[4] This is an important distinction. The court assumes the validity of Mr. Erickson's copyright. Even if the copyright is valid, however, individual elements of the copyrighted work might not be protected by the copyright against copying by others. This reflects the constitutional and statutory limitations of copyright, which cannot be used to create monopolies over facts or

consider whether each alleged similarity between the works relates to a protected or to an unprotected element of *Pi Symphony*. *See Apple Computer*, 35 F.3d at 1443. Unprotected elements of a copyrighted work can include (1) ideas, as opposed to expression; (2) expressions that are indistinguishable from the underlying ideas; (3) standard or stock elements (*scènes à faire*); and (4) facts and other public information.[5]

First, it is axiomatic that a copyright only protects expression, not the idea behind the expression. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery[.]"). Thus, "to the extent the similarities between plaintiff's and defendant's works are confined to ideas and general concepts, these similarities are noninfringing." *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988). In *Data East*, the maker of a karate video game for personal computers sued the maker of another karate

---

ideas. *See* 17 U.S.C. § 102(b) (copyright protection does not extend to ideas); *Feist*, 499 U.S. at 363-64 (Constitution allows protection only of original works, which excludes factual matter).

Mr. Erickson's arguments also appear to conflate the extrinsic and intrinsic tests. The court agrees that it cannot at this stage gauge the overall feel of similarity between the two works; that is the purpose of the intrinsic test, which is generally reserved for the jury. But the court must first apply the extrinsic test and dissect the copyrighted work to determine whether specific, articulable similarities are related to elements that are by themselves protected by the copyright. "[O]nly those elements of a work that are protectable … can be compared when it comes to the ultimate question of illicit copying[.]" *Apple Computer*, 35 F.3d at 1443. If the only concrete similarities between the two works relate to elements not protected by copyright (such as facts or general ideas), then there can be no infringement. To meet the extrinsic test, Mr. Erickson must do more than assert that the two works would sound substantially similar to any listener. Mr. Erickson, however, has not provided this court with more specific arguments sufficient to satisfy that test.

[5] Depending on the circumstances of the case, elements of a work might fall outside the scope of the work's copyright protection for other reasons. For example, if the alleged infringer has a license to use certain elements of a copyrighted work, those elements cannot be used to establish substantial similarity in an infringement claim. *See Apple Computer*, 35 F.3d at 1441-42.

video game for infringement. The Ninth Circuit held that there was no substantial similarity as a matter of law because the similarities identified by the plaintiff were drawn directly from the sport of karate and the constraints of the computer operating system. *Id.* at 209. For example, "[t]he number of combatants, the stance employed by the combatants, established and recognized moves and motions regularly employed in the sport of karate," and matters of scoring and refereeing were all elements that "necessarily follow from the *idea* of a martial arts karate combat game, or are inseparable from, indispensable to, or even standard treatment of the *idea* of the karate sport. As such, they are not protectable." *Id.* (emphasis in original).

Second, and closely related, is the doctrine of merger. If a non-protectable idea can only be expressed in one way, the resulting expression will also not be protected by copyright; otherwise, the holder of the copyright for that expression would effectively have a copyright over the underlying idea. *See CDN Inc. v. Kapes*, 197 F.3d 1256, 1261. Consider, for example, the degree of copyright protection afforded to a line of stuffed dinosaur toys. The idea of a stuffed dinosaur toy can only be expressed in the form of a stuffed animal shaped like a dinosaur. Thus a defendant's line of stuffed dinosaur toys cannot be said to infringe on the plaintiff's toys if the only similarities are the physiognomy of the dinosaur species and the fact that the toy is made out of plush fabric filled with soft material. *See Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987).[6]

Merger most often applies to claims of infringement described at high levels of abstraction, for abstract descriptions of expression blur easily into the ideas behind the

---

[6] The example of *Aliotti* illustrates that the analysis in *Data East* could also have been expressed in terms of merger. Indeed, the *Data East* court relied heavily on *Aliotti*, as well as the grandfather of Ninth Circuit merger cases, *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738 (9th Cir. 1971).

OPINION AND ORDER, Page 7

expression. *Cf. CDN*, 197 F.3d at 1262 ("[T]he higher the level of abstraction copied, the less likely [the copy] will be [an] infringement of a copyright."). For example, the *Aliotti* court suggested that similarities related to the choice of material, distinctive forms of stitching, or exaggerated facial features—elements at a lower level of abstraction—*could* be protectable elements of a line of stuffed dinosaur toys. *See Aliotti*, 831 F.2d at 900-01; *cf. Coquico, Inc. v. Rodriquez-Miranda*, 562 F.3d 62, 68-69 (1st Cir. 2009) (merger and *scènes à faire* doctrines foreclosed copyright protection based solely on realistic depiction of frog in format of a stuffed, plush toy; nonetheless, distinctive stitching pattern, idiosyncratic color combination, unique pose and placement of flag on frog's underbelly were all protected elements).

Third, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable [elements] under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003). Such *scènes à faire* are more common in literary or dramatic works, in which certain themes or character types flow directly from common plot ideas. *See Campbell*, 718 F. Supp. 2d at 1115 (generic characters of the "cocky kid" and "older mentor" derive from basic plot idea of a young mentee-older mentor storyline and are therefore not protectable elements of a copyrighted work). For example, a daytime talk show will contain such stock elements as a host, interviews of guest celebrities, and cooking segments, and these standard elements are not protected by copyright. *See Zella*, 529 F. Supp. 2d at 1134-35.[7] Although more rare, *scènes à*

---

[7] *Aliotti* suggests how the concept of *scènes à faire* could also be applied in the design context. The court rejected the argument that the parties' stuffed animal Tyrannosauruses were substantially similar because both were depicted with open mouths; the court reasoned that because Tyrannosauruses were carnivores, they are often depicted in such a fashion. 831 F.2d at 901 n.1. Likewise, substantial similarity could not be based on the fact that plaintiff's Pterodactyl and defendant's Pteranodon were both designed as mobiles, as these were winged creatures that would logically be depicted mid-flight. *Id.* In effect, the court was noting that Tyrannosauruses

*faire* can also appear in musical works in the form of common melodic sequences. *See Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 720 (9th Cir. 1976); *Griffin v. J-Records*, 398 F. Supp. 2d 1137, 1143 (E.D. Wash. 2005). *But see Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir. 2004) (reversing district court finding that musical sequence was a *scène à faire* and therefore not protected by the song's copyright).

Finally, as a constitutional matter, facts cannot be protected by copyright. *See Feist*, 499 U.S. at 363. Thus the publisher of a phone book cannot prevent others from copying the facts contained within that phone book (*e.g.*, the names, towns and phone numbers of phone service subscribers). *Id.* Similarly, an artist who makes lifelike jellyfish sculptures "may not prevent others from copying elements of expression that nature displays for all observers." *Satava*, 323 F.3d at 812. In *Christianson*, the Ninth Circuit held on a motion to dismiss that an outline map of the United States and the grouping of states as used by the National Reporter System were elements within the public domain and therefore not protected by the copyright of plaintiff's illustration. 149 F.2d at 203-04. In such a case, as in *Satava* and *Feist*, the copyright holder could only prevent others from directly copying his own version of such a map (or jellyfish or phone book), but he could not prevent others from making their own version. *Id.* at 204.

After the court has identified which of the alleged similarities are related to unprotected elements, it can determine the proper scope of the copyright. *See Apple Computer*, 35 F.3d at 1443. If few similarities remain after the unprotected elements are set aside (*e.g.*, facts, ideas, expressions merged with ideas, and *scènes à faire*), the scope of the copyright is "thin," which means that it only protects the copyrighted work from virtually identical copying. *Id.* at 1442-43;

---

with gaping mouths and Pterodactyls with outspread wings were *scènes à faire* in the depiction of dinosaurs.

*see also, e.g.*, *Feist*, 499 U.S. at 349. If many of the similarities relate to protected elements, on the other hand, then the scope of the copyright is "broad," and it is easier to demonstrate that the two works, compared as a whole, are substantially similar. *See Apple Computer*, 35 F.3d at 1443.

Applying the extrinsic test here is made more challenging by the medium of music, "which lack[s] distinct elements of ideas and expression." *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004) ("The application of the extrinsic test … to musical compositions is a somewhat unnatural task, guided by relatively little precedent."). Unlike with literary works, there is no uniform set of factors to be considered; rather, "music is comprised of a large array of elements, some combination of which is protectable by copyright." *Id.* at 849.[8] Relevant elements may include melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, "hooks," instrumental figures, and overall song structure. *See id.* Despite the added difficulty of analytically dissecting musical works, however, it is clear that any substantial similarity between Mr. Erickson's work and Mr. Blake's work is based on non-protectable elements. Thus the scope of Mr. Erickson's copyright, at least vis-à-vis Mr. Blake's work, is "thin."

The primary similarity between *Pi Symphony* and "What Pi Sounds Like" is the musical pattern formed by transposing the digits of *pi* to a set of musical notes. That pattern is not protected by Mr. Erickson's copyright for *Pi Symphony*. *Pi* is a non-copyrightable fact, and the transcription of *pi* to music is a non-copyrightable idea. The resulting pattern of notes is an expression that merges with the non-copyrightable idea of putting *pi* to music: assigning digits to musical notes and playing those notes in the sequence of *pi* is an idea that can only be expressed

---

[8] When evaluating literary works for substantial similarity, courts compare the works' "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985).

OPINION AND ORDER, Page 10

in a finite number of ways.[9] This does not mean that Mr. Erickson's copyright is invalid, only that Mr. Erickson may not use his copyright to stop others from employing this particular pattern of musical notes.

What *may* be protected by copyright is the combination of that pattern with other musical elements: the choice of scale, rhythm, harmony, and embellishments or variation, for example. *See Granite*, 532 F.2d at 721 ("The copyrightability of [the song] is not the four-note sequence [or the melody based on *pi*], but the fitting together of this sequence with other melodious phrases into a unique composition."). *Pi Symphony* and "What Pi Sounds Like" employ different rhythms, different phrasing, different harmonies, and different tempos. The court does not agree with Mr. Erickson that the melodies of *Pi Symphony* and "What Pi Sounds Like" are sufficiently similar in their cadence or tempo to raise a question of substantial similarity.[10] If there are additional similarities that relate to protectable elements of Mr. Erickson's musical work, those similarities are minor and scattered throughout the work.[11] For one work to be *substantially* similar to another, more than incidental and occasional similarities are required. *See, e.g.*, *Apple Computer*, 35 F.3d at 1439 n.6 (the remaining similarities "do not comprise a core of protectable … similarities substantial enough to warrant a finding of illicit copying under a standard of

---

[9] Indeed, an online search generates numerous examples of "*pi* songs," which use the same pattern of notes. Many of these "*pi* songs" were published before 2010.

[10] The court reiterates that the relevant musical composition is the full orchestral score of *Pi Symphony*, and not the simplified pattern of the work's primary motif, which was attached to Mr. Erickson's registered work. The melody of *Pi Symphony* bears little resemblance to that of Mr. Blake's "What Pi Sounds Like" other than the pattern of notes derived from the digits of *pi*.

[11] During a telephone conference call, Mr. Erickson suggested that Mr. Blake's work used a similar chord structure as *Pi Symphony*. Hrg. Tr. 10:13-15 (Dec. 9, 2011). It is not clear how or in which passages the chord structures are alleged to be the same, and any such similarity appears to be an isolated similarity that, on its own, is not sufficiently substantial to support an infringement claim.

OPINION AND ORDER, Page 11

substantial similarity"); *Data East*, 862 F.2d at 209-10 (two remaining similarities were inconsequential to overall assessment of works' substantial similarity); *Litchfield v. Spielberg*, 736 F.2d 1352, 1356-57 (9th Cir. 1984) (general similarities or "random similarities scattered throughout the works" are insufficient to support a claim of substantial similarity).

Thus, after the similarities based on unprotected elements of *Pi Symphony* are set aside, very few—if any—similarities remain. Mr. Erickson's copyright is therefore "thin" and protects his work only from virtually identical copying. *See, e.g., Krofft*, 562 F.2d at 1168 ("When idea and expression coincide, there will be protection against nothing other than identical copying of the work."); *Ets-Hokin v. Skyy Spirits Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) ("When we apply the limiting doctrines, subtracting the unoriginal elements, [plaintiff] is left with only a 'thin' copyright, which protects against only virtually identical copying."); *Apple Computer*, 35 F.3d at 1552. Mr. Erickson's copyright, which is presumed valid, protects his *expression* of the musical pattern formed by the digits of *pi*. But what is original about that expression—the cadence, flourishes, harmonies, structure, and so on—is not virtually identical, or even particularly similar, to "What Pi Sounds Like."

Put another way, as the plaintiff did in *Aliotti*, Mr. Erickson is asserting similarities at a high level of generality. To overcome the merger doctrine, articulable similarities with greater specificity are needed. Mr. Erickson "may prevent others from copying the original features he contributed [to the melody of *pi*], but he may not prevent others from copying elements of expression that nature displays for all observers." *Satava*, 323 F.3d at 812. Mr. Blake's musical work, therefore, does not infringe on Mr. Erickson's copyright.

OPINION AND ORDER, Page 12

## II.    Unfair Competition

Mr. Erickson has also asserted a claim of unfair competition in general terms, without specifying the law on which he relies. Because Mr. Erickson invokes the court's supplemental jurisdiction, he presumably intends to assert state law, and as the complaint was first filed in the District of Nebraska, the relevant state law is presumably that of Nebraska. The count could be dismissed for failing to state the law on which it is based.[12] Regardless, this court would lack supplemental jurisdiction over the state claim after the copyright claim has been dismissed. Either way, the unfair competition claim falls with the copyright claim, and Mr. Erickson's complaint should be dismissed in its entirety.[13]

Before concluding, the court notes that Mr. Erickson's grievance may be based not so much on any "copying" by Mr. Blake, but rather on the perception that Mr. Erickson's years of hard work in promoting *Pi Symphony* were undermined by the sudden popularity of Mr. Blake's work and the media attention it received. For example, Mr. Erickson includes in his unfair competition count a general allegation that Mr. Blake "has and is engaging in acts of unfair competition, unlawful appropriation, unjust enrichment, wrongful deception of the purchasing public, and unlawful trading on Plaintiff's goodwill and the public's acceptance of Plaintiff's copyright works."

---

[12] While pleadings should be construed leniently when filed by a *per se* plaintiff, Mr. Erickson was represented by counsel when he originally filed his complaint.

[13] There may also be a question about the extent to which copyright law preempts an unfair competition claim. Because this issue was not raised by any party, the court declines to address it.

Copyright protects against the copying of original elements of an author's work.[14] It does not protect the copyright holder's goodwill, market status, or artistic success. It does not even protect the author's hard work in being the first to create a compilation of information otherwise available in the public domain. *See Feist*, 499 U.S. at 359-360 (rejecting the "sweat of the brow" theory of copyright protection). These limitations derive from the constitutional basis of copyright, which is "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. 1, sec. 8, cl. 8. Copyright is thus intended to protect the original work of authors without granting monopolies over facts or ideas that would hinder further progress. *See* M. Nimmer & D. Nimmer, 4 *Nimmer on Copyright* 13.03[B](2) at 13-77 (2010).[15] Given statutory law, the Constitution, and Supreme Court precedent, Mr. Erickson cannot use his copyright to stop Mr. Blake from employing the same idea—the transcription of the digits of *pi* to musical notes.

---

[14] "Original" in this context does not require novelty, but it does require some degree of creativity. *See Feist*, 499 U.S. at 345.

[15] As the Ninth Circuit in *Satava* explained:

We do not mean to short-change the legitimate need of creative artists to protect their original works. After all, copyright law achieves its purpose of enriching our culture by giving artists a financial incentive to create. But we must be careful in copyright cases not to cheat the public domain. Only by vigorously policing the line between idea and expression can we ensure both that artists receive due reward for their original creations and that proper latitude is granted other artists to make use of ideas that properly belong to us all.

*Satava*, 323 F.3d at 813.

OPINION AND ORDER, Page 14

**CONCLUSION**

For the reasons stated above, the motion to dismiss [10] is GRANTED.

Dated this 14th day of March, 2012.


/s/ Michael H. Simon
Michael H. Simon
United States District Judge